UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-10792-RGS

FIDAE C. AZOURI AND TRA, LLC

v.

ENERGY NORTH, INC.

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

July 13, 2009

STEARNS, D.J.

Plaintiffs Fidae Azouri and TRA, LLC (TRA), and defendant Energy North, Inc. (ENI) are parties to a Product Sales and Security Agreement (Supply Agreement), in which ENI agreed to provide gasoline and petroleum products to plaintiffs' service station in Rochester, New Hampshire. ENI claims that plaintiffs "de-branded" the station, failed to pay for gas and products, and purchased petroleum products from other suppliers contrary to the terms of the Supply Agreement. Plaintiffs contend that ENI "misbranded, adulterated and/or mislabeled petroleum products, and comingled petroleum products" in violation of the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801-2806 (PMPA).

ENI filed a breach of contract action against Azouri and TRA, LLC, in the New Hampshire Superior Court on May 29, 2008. On August 18, 2008, the Superior Court denied Azouri's motion to dismiss, but stayed the case to permit the parties to proceed to arbitration. In September of 2008, ENI filed a Demand for Arbitration. In the arbitration proceeding, Azouri and TRA, filed counterclaims against ENI, which are similar to the claims in the instant case.

On May 14, 2009, plaintiffs filed this action alleging breach of contract and various PMPA violations. ENI moves to dismiss, pointing to the previously-filed New Hampshire state court action, and the ongoing arbitration proceedings.[1] Plaintiffs oppose the motion contending that ENI's state-court claims are different from the federal claims (in at least some respects).

> The Plaintiff-Azouri contends that the parties' Agreements are contracts of adhesion in which the Plaintiff-Azouri, who had never operated a gasoline service station, was asked to sign confusing documents drafted by the Defendant-ENI, in which all rights and benefits existed to the benefit of the Defendant-ENI, without any explanation as to the consequences of signing said documents; whether the Plaintiff-Azouri was giving up any rights provided by Congress or any state or federal law; whether the Plaintiff-Azouri was giving up any procedural rights (i.e., use of certain discovery tools, such as depositions, admissions); the meaning, costs and procedures of arbitration; that arbitrations are binding and cannot be

---

[1] Section 28 of the Supply Agreement contains an arbitration clause which requires that all claims and disputes be decided by the American Arbitration Association. The paragraph provides as follows:

> Claims, disputes or other matters in question between the parties to this Agreement or breach thereof shall be subject to an decided by arbitration unless the parties mutually agree otherwise.
> Demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. A demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claims, dispute or other matter in question would be barred by the applicable statutes of limitations.
> No arbitration arising out of or relating to this Agreement shall include, be consolation, joinder or in any other manner, an additional person or entity not a party to this Agreement. The foregoing agreement to arbitrate shall be specifically enforceable in accordance with applicable law in any court having jurisdiction thereof.
> The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

> appealed in a court of law; and that AAA would be the arbitral forum utilized. The Plaintiff-Azouri was never provided with the rules of the AAA, including rules which state that the arbitrator shall decide whether arbitration is an appropriate forum for the dispute and that it is the arbitrator who decides what discovery procedures can be utilized in the arbitration process. . . . There is nothing in any record, to date, that would indicate that there was any discussion between the parties to the effect that the Plaintiff-Azouri would be giving up any rights by agreeing to arbitration, or that the Plaintiff-Azouri, by agreeing to arbitration, was waiving any right to proceed in a judicial forum. . . . The only document of which the Plaintiff-Azouri is aware is a facsimile from a Pat O'Connell, an employee of the Defendant, in which Mr. O'Connell states that the arbitration clause [inserted in the Agreements] "will prevent costly legal fees…"

Opposition Memorandum, at 11-12. Plaintiffs assert "that the Agreements were breached by the defendant ENI, making the Agreements, and any arbitration agreement contained therein, moot." Id. at 12.

"[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). This policy confines the role of the federal court in arbitration disputes to issues of arbitrability and the confirmatory (and for the most part, ministerial) approval of an award. In the first instance, it is for the court to decide the validity and scope of an arbitration clause. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-945 (1995). However, "other types of claims, including even some 'gateway questions' that might dispose of the entire claim, are presumptively left to the arbitrator. This category includes 'procedural questions which grow out of the dispute and bear on its final disposition.'" Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 10 (1st Cir. 2005), quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84-85 (2002). See also Nat'l Cas. Co. v. First State Ins. Group, 430 F.3d 492, 499-500 (1st Cir. 2005); Shaw's Supermarkets,

Inc. v. United Food & Commercial Workers Union, Local 791, 321 F.3d 251, 254 (1st Cir. 2003). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985), quoting Moses H. Cone, 460 U.S. at 24-25.

The parties' arbitration clause states clearly that all of their disputes are subject to arbitration. While plaintiffs assert that ENI did not inform them as to the scope of the arbitration clause, plaintiffs clearly were aware of its existence and did not object to its inclusion in the Supply Agreement. "[T]he fact that an agreement is a contract of adhesion . . . does not alone make the document invalid . . . ." Awuah v. Coverall N. Am., Inc., 554 F.3d 7, 12 n.4 (1st Cir. 2009), citing Am. Bankers Mortgage Corp. v. Fed. Home Loan Mortgage Corp., 75 F.3d 1401, [1412] (9th Cir.1996); Level Export Corp. v. Wolz, Aiken & Co., 111 N.E.2d 218, [221] (N.Y. 1953); Williston on Contracts, § 49:22 (4th ed. 2008). Plaintiffs argue that their PMPA claims are too complex for arbitration.[2] Second, plaintiffs argue that arbitration is too expensive.

Relying on Awuah as a fallback position, plaintiffs assert that their claims "are more properly before the federal court." The First Circuit remanded the Awuah matter to the district court because of the appellee's complaint that the costs of the arbitration in light

---

[2]The court will not discuss this argument as it is nonsensical. Plaintiffs fail to specify a single reason why an arbitration cannot properly decide the dispute. See McCaskill v. SCI Mgmt. Corp., 298 F.3d 677, 685 (7th Cir. 2002), quoting Graham Oil Co. v. ARCO Prod. Co., a Div. of Atlantic Richfield Co., 43 F.3d 1244 (9th Cir. 1994).

of the size of the likely recovery rendered it pointless. The <u>Awuah</u> court found that while "the validity of an arbitration clause is itself a matter for the arbitrator where the agreement so provides," a court can consider whether "the arbitral forum is illusory."[3] <u>Awuah</u>, 554 F.3d at 12.

Plaintiffs' cost argument is not borne out by the record. (Plaintiffs' share of the costs of the arbitration portion is $8,325 for administrative fees, 30 hours of study by the arbitrator, and a one day hearing). Moreover, plaintiffs' concern is cost, why did they file a duplicative proceeding in a federal court in Boston? The parties' arbitration clause does not limit plaintiffs' rights "important to the effectuation of the PMPA's policies." <u>Id</u>. at 1248. The arbitration clause is enforceable. That is the end of the matter.

ORDER

For the foregoing reasons, ENI's motion to dismiss is <u>ALLOWED</u> . The Clerk may close the case.

SO ORDERED

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

---

[3]The First Circuit noted that "[f]ranchise agreements are often contracts of adhesion offered to those with little bargaining power; probably few would go unsigned even if Rule 7(a) were printed in bold type on the front page. Further, courts have no general power to relieve parties of bad bargains except in extreme cases, i.e., where the contract is unconscionable. The question here is simply who should decide the unconscionability issue, and the arbitration clause said in effect that this was for the arbitrator." <u>Awuah</u>, 554 F.3d at 12.